Filed 4/10/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ELSIE HORATH, | D063124; D063709 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. |
| | 37-2010-00104019-CU-PA-CTL) |
| JOHN HESS, | |
| Defendant and Appellant. | |

CONSOLIDATED APPEALS from a judgment and postjudgment order of the Superior Court of San Diego County, Ronald Prager, Judge. The judgment is affirmed; the postjudgment order is reversed and remanded for further proceedings.

Law Offices of Kim L. Bensen, Todd G. Glanz; Pollak, Vida & Fisher and Daniel P. Barer for Defendant and Appellant.

The McCabe Law Firm, James M. McCabe; Law Office of Robert Hamparyan, Robert Hamparyan; Boudreau Williams and Jon R. Williams for Plaintiff and Respondent.

In his first appeal (Case No. D063124), defendant John Hess appeals a judgment entered confirming an arbitration award in favor of plaintiff Elsie Horath in the amount of

$366,527.22. On appeal, he argues the trial court erred by entering the judgment because: (1) Horath had stipulated in writing before the arbitration proceeding that she would accept the arbitrator's award or $100,000, whichever amount was less, plus allowable costs; and (2) he was not required to timely move to correct or vacate the arbitrator's award and instead could tender $100,000, plus costs, after the judgment was entered on that award and thereby fully satisfy the judgment pursuant to Code of Civil Procedure sections 724.010 and 724.050.[1]

In his second appeal (Case No. D063709), Hess appeals a postjudgment order denying his section 724.050 motion for acknowledgement of satisfaction of judgment. He argues the court erred because the undisputed facts show he satisfied the judgment by tendering $100,000, plus costs, to Horath. He also argues the court erred by awarding Horath $5,000 in attorney fees as the prevailing party pursuant to section 724.080. We consolidated the appeals and conclude the trial court erred by denying Hess's section 724.050 motion for acknowledgement of satisfaction of judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Case No. D063124*. Horath apparently was injured when Hess's car struck the rear of her vehicle, and filed a personal injury action against Hess. On November 18, 2011, the parties' attorneys entered into a written stipulation (Stipulation) to submit the dispute to an arbitrator for private binding arbitration. The Stipulation states:

---

[1] All further statutory references are to the Code of Civil Procedure.

"IT IS HEREBY STIPULATED AND AGREED . . . that this matter be submitted to private BINDING ARBITRATION.

"The award shall be in writing and signed by the Arbitrator. It shall include a determination of all questions submitted to the Arbitrator the decision of which is necessary in order to determine the controversy. *Any party to the arbitration shall be entitled to have the award of the Arbitrator entered as a judgment* in any court of competent jurisdiction in accordance with California Code of Civil Procedure § 1285 et seq.

"THE PARTIES further agree that Defendant [i.e., Hess] will pay the award of the Arbitrator or $44,000[,] whichever is greater, and *Plaintiff* [i.e., Horath] *will accept the award of the Arbitrator or $100,000, whichever is less* but in no event less than $44,000. The forgoing amounts are not inclusive of allowable costs including costs of proof, if applicable, which may be awarded by the Arbitrator and are in addition to the amounts stated above. Parties to share cost of Arbitration equally.

"*The terms of this agreement*, or the limits of any liability insurance policy which may afford coverage to [Hess,] *may not be disclosed to the Arbitrator*." (Italics added.)

On February 3, 2012, the arbitrator, Thomas E. Gniatkowski, issued a decision finding Hess liable and awarding Horath $329,644.61 in damages. Thereafter, per Horath's request, the arbitrator awarded her costs in the amount of $36,882.61. Therefore, the total amount of the arbitration award (Award) was $366,527.22.

On May 21, 2012, Horath filed a petition to confirm the Award in the total amount of $366,527.22. On June 27, more than 100 days after the date of the Award, Hess filed a motion to limit the judgment to the amount of $100,000, citing the Stipulation's limitations on the amounts to which the parties agreed. Horath opposed the motion, arguing it was, in effect, a motion to "correct" the Award and, as such, was not timely filed within the 100-day limit under sections 1288 and 1288.2. On July 20, the trial court

3

issued an order granting Horath's petition to confirm the Award and denying Hess's motion. The court stated Hess's motion to vacate or correct the Award was not filed within the 100-day limit under section 1288.

Hess filed a section 473 motion for reconsideration, arguing again that the Stipulation limited the amount Horath could recover to $100,000. The court denied that motion, finding Hess had not shown grounds for relief under section 473. On September 27, 2012, the court entered judgment for Horath in the amount of $366,527.22. Hess timely filed a notice of appeal in Case No. D063124 challenging the judgment.

*Case No. D063709.* On December 3, 2012, Hess filed a motion for acknowledgment of satisfaction of judgment, arguing he had paid Horath $100,000 plus costs and is therefore entitled to an acknowledgment of full satisfaction pursuant to the terms of the Stipulation and section 724.050.[2] He stated he was not challenging the Award or the judgment, but was instead seeking to enforce the terms of the Stipulation pursuant to which Horath had agreed to accept $100,000 plus costs, regardless of the amount of the arbitration award or judgment. He further stated that his motion did not seek reconsideration of the trial court's prior rulings.

Horath opposed the motion, arguing Hess's attempts to vacate or correct the Award had already been decided by the court in its prior rulings in the case. She argued section 724.050 was not a proper procedural vehicle for Hess to collaterally attack the

---

[2]    The record in Case No. D063124 shows that on October 30, 2012, Horath's attorney filed an acknowledgment of *partial* satisfaction of judgment, acknowledging receipt from Hess of the amount of $136,882.61.

4

Award and judgment and, in any event, she did not accept Hess's tender of $100,000 plus costs as full satisfaction of the judgment.[3]  Horath also sought an award of attorney fees for opposing Hess's motion.  On March 15, 2013, the trial court issued an order denying Hess's section 724.050 motion for acknowledgement of satisfaction of judgment.  The court stated that Hess "asks the Court to imply terms set forth in the [S]tipulation that are not apparent on the face of the [A]ward.  This . . . would be an unauthorized modification of the [A]ward."  It further stated Hess had failed to timely file motions to modify the Award as reflected in its prior rulings.  It also found Hess had not objected to the judgment prior to its entry.  The court awarded Horath $5,000 for attorney fees pursuant to section 724.080.  Hess timely filed a notice of appeal in Case No. D063709 challenging the postjudgment order denying his section 724.050 motion.

DISCUSSION

*Case No. D063709*

*I*

*Appealability*

Because our disposition of Case No. D063709 will make the appeal in Case No. D063124 moot, we first address Hess's appeal of the trial court's postjudgment order denying his section 724.050 motion for acknowledgment of satisfaction of judgment.  In so doing, we first decide the court's postjudgment order is an appealable postjudgment

---

3     Horath also argued Hess had not paid postjudgment interest that had accrued since the judgment was entered.

5

order under section 904.1, subdivision (a)(2). "An appeal . . . may be taken from any of the following: [¶] (1) From a judgment . . . . [¶] (2) From an order made after a judgment made appealable by paragraph (1)." (§ 904.1, subd. (a).) Postjudgment orders granting or denying section 724.050 motions are appealable. (*McCall v. Four Star Music Co.* (1996) 51 Cal.App.4th 1394, 1398; *Pecaflor Construction, Inc. v. Landes* (1988) 198 Cal.App.3d 342, 345; *Yanchor v. Kagan* (1971) 22 Cal.App.3d 544, 546 [Code Civ. Proc., former § 675].)

## II

### *Interpretation of the Stipulation and Application of Section 724.050*

The crux of this case involves the proper interpretation of the Stipulation and the applicability of section 724.050 to enforce its terms. Hess asserts the Stipulation sets forth an agreement that Horath will accept $100,000 plus costs as payment in full of the Award and the judgment, regardless of whether he timely sought to vacate or correct the Award prior to entry of the judgment. In contrast, Horath apparently argues the Stipulation did not exempt Hess from the requirement that he timely seek to vacate or correct the Award to reflect the parties' agreement regarding the maximum amount she would accept as payment.

### A

A written stipulation or other agreement to arbitrate a controversy is subject to the general rules of contract enforcement and interpretation. (*Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1214.) Section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter

6

arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."  The California Supreme Court stated: "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.)  If contractual language is clear and explicit, it governs.  (Civ. Code, § 1638.)"  (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.)

Another court described the principles to be applied when interpreting a contract, stating: "When considering a question of contractual interpretation, we apply the following rules.  'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.'  [Citation.]  'The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.'  [Citation.]  'When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . .' "  (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1709 (*WYDA*).)  "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties."  (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912.)

"When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party.  If it is not, the case is over.  [Citation.]  If the court decides the language is

7

reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean? [Citation.] [¶] Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself [citation] or from extrinsic evidence of the parties' intent [citation]." (*Southern Cal. Edison Co. v. Superior Court* (1995) 37 Cal.App.4th 839, 847-848.) If a contract is susceptible to two different reasonable interpretations, the contract is ambiguous. (*Ibid.*) A court must then construe that ambiguous contract language "by applying the standard rules of interpretation in order to give effect to the mutual intention of the parties [citation]." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 798.)

On appeal, a "trial court's ruling on the threshold determination of 'ambiguity' (i.e., whether the proffered evidence is relevant to prove a meaning to which the language is reasonably susceptible) is a question of law, not of fact. [Citation.] Thus[,] the threshold determination of ambiguity is subject to independent review." (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) If the contract language is determined to be ambiguous and conflicting extrinsic evidence was admitted on the meaning of that language, "any reasonable construction will be upheld as long as it is supported by substantial evidence." (*Id*. at p. 1166.) If, however, no extrinsic evidence was admitted or the extrinsic evidence is not conflicting, the construction of the ambiguous contract language is a question of law subject to our independent construction. (*Ibid.*) Because the evidence in this case is undisputed, we construe the Stipulation de novo, or independently, and do not defer to the trial court's interpretation. (*Maggio v. Windward Capital Management Co.*, *supra*, 80

8

Cal.App.4th at p. 1214; *Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1189.)

B

Prior to trial, the parties' attorneys signed the Stipulation on behalf of their clients. Horath does not dispute, and we presume, her attorney had the authority to legally bind her to the terms of the Stipulation. The Stipulation provided the arbitrator was to determine all questions submitted to him or her as necessary to decide the controversy. Importantly, it also provided that any party was entitled to have the arbitrator's award entered as a judgment in any court with jurisdiction pursuant to section 1285 et seq. The Stipulation then provided the parties agreed that "Defendant [i.e., Hess] will pay the award of the Arbitrator or $44,000[,] whichever is greater, and *Plaintiff* [i.e., Horath] *will accept the award of the Arbitrator or $100,000, whichever is less* but in no event less than $44,000. The forgoing amounts are not inclusive of allowable costs including costs of proof, if applicable, which may be awarded by the Arbitrator and are in addition to the amounts stated above." (Italics added.) Finally, it provided that the terms of the Stipulation were not to be disclosed to the arbitrator.

Because the language of the Stipulation clearly and explicitly states the arbitrator was not to be informed about its "high-low" or other provisions, the arbitrator was charged with determining the parties' controversy without any limitations on the amount of the arbitration award. The Stipulation's language also clearly and explicitly states that any party (e.g., Horath) could have the arbitration award entered as a judgment pursuant to section 1285 et seq. (i.e., by means of a petition to confirm the award). However, in

9

the event the arbitration award exceeded $100,000, the Stipulation provides that Horath would accept a maximum amount of $100,000 plus costs. The Stipulation does not contain any language requiring Hess, to enforce the Stipulation's "high-low" provision, to file a motion to vacate or correct the arbitration award or respond to a petition to confirm the award. Rather, the clear and explicit language of the Stipulation provides for the filing of a petition to confirm the arbitration award in its full amount and entry of judgment, without regard to the Stipulation's "high-low" limit on the amount Hess is required to pay Horath. Horath does not cite any language in the Stipulation, or any extrinsic evidence that supports any reasonable interpretation, requiring Hess to file a petition to vacate or correct the arbitration award based on the Stipulation's "high-low" limitation provision. Because the Stipulation is not reasonably susceptible to Horath's suggested interpretation to the contrary, we conclude it is unambiguous and therefore apply its clear and explicit language to the undisputed facts in this case.

Applying the clear language of the Stipulation to the undisputed facts in this case, there can be only one reasonable interpretation regarding its "high-low" provision. We conclude the Stipulation's language implicitly, if not expressly, prohibited Hess from challenging the amount of the Award or the judgment. The Stipulation provided Horath had the right to have the Award entered as a judgment in accordance with section 1285 et seq. (i.e., a petition to confirm the Award). Hess could not challenge the amount of the Award or amount of the judgment pursuant to a petition to confirm the Award. Therefore, to enforce the Stipulation's "high-low" provision, Hess necessarily would have the right to fully satisfy that judgment by paying or tendering an amount within the "high-

10

low" provision (i.e., a maximum amount of $100,000 plus costs). Horath expressly agreed in the Stipulation to accept the amount of the Award or $100,000, whichever was less (not including costs awarded by the arbitrator). That contractual provision bound Horath to accept $100,000 plus costs in full satisfaction of the judgment entered confirming the Award.

C

Because of Horath's refusal to file an acknowledgment of full satisfaction of judgment, Hess properly filed a section 724.050 motion to require her to do so or, if she refused, to obtain a court-entered satisfaction of judgment. As Hess asserts, section 724.050 provides the sole statutory procedure to require a judgment creditor to file an acknowledgment of satisfaction of judgment or, if he or she refuses, to obtain a satisfaction of judgment entered by the court clerk. (*Quintana v. Gibson* (2003) 113 Cal.App.4th 89, 91 ["[T]he noticed motion procedure set forth in . . . section 724.050 is the exclusive method for obtaining an order for entry of satisfaction of judgment."].) "The statutory scheme [i.e., section 724.050] provides only a single method for a judgment debtor to obtain an order for entry of satisfaction of judgment . . . in those cases in which the judgment creditor refuses or fails to file or deliver a signed acknowledgment of satisfaction [of judgment]." (*Id.* at p. 94.)

Section 724.010, subdivision (a), provides: "*A money judgment may be satisfied by payment of the full amount required to satisfy the judgment or by acceptance by the judgment creditor of a lesser sum in full satisfaction of the judgment.*" (Italics added.) Therefore, if a judgment creditor accepts, or contractually agrees to accept, a lesser sum

11

in full satisfaction of the judgment, the tender or payment of that lesser sum by a judgment debtor will fully satisfy a judgment for a greater amount. (§ 724.010, subd. (a).) On such satisfaction, the court clerk shall enter a satisfaction of money judgment when either an acknowledgment of satisfaction of judgment is filed with the court or the court orders entry of satisfaction of judgment. (§ 724.020.) When a money judgment is satisfied, the judgment creditor is required to immediately file with the court an acknowledgment of satisfaction of judgment. (§ 724.030.) However, if the judgment creditor does not do so (as in this case), section 724.050 provides the procedures the judgment debtor must follow to obtain such an acknowledgment or a court-entered satisfaction of judgment. Section 724.050 provides:

> "(a) *If a money judgment has been satisfied, the judgment debtor . . . may serve* personally or by mail *on the judgment creditor a demand* in writing that the judgment creditor do one or both of the following:

> "(1) File an acknowledgment of satisfaction of judgment with the court.

> "(2) Execute, acknowledge, and deliver an acknowledgment of satisfaction of judgment to the person who made the demand. [¶] . . . [¶]

> "(c) If the judgment has been satisfied, the judgment creditor shall comply with the demand not later than 15 days after actual receipt of the demand.

> "(d) *If the judgment creditor does not comply with the demand within the time allowed, the person making the demand may apply to the court on noticed motion for an order requiring the judgment creditor to comply with the demand. . . . If the court determines that the judgment has been satisfied and that the judgment creditor has not complied with the demand, the court shall either (1) order the judgment creditor to comply with the demand or (2) order the court clerk to enter satisfaction of the judgment*.

12

"(e) If the judgment has been satisfied and the judgment creditor fails without just cause to comply with the demand within the time allowed, the judgment creditor is liable to the person who made the demand for all damages sustained by reason of such failure and shall also forfeit one hundred dollars ($100) to such person.  Liability under this subdivision may be determined in the proceedings on the motion pursuant to subdivision (d) or in an action."  (Italics added.)

Contrary to Horath's assertion, relevant case law supports our reasoning.  In

*Walton v. Mueller* (2009) 180 Cal.App.4th 161, cited by Hess, a $40,000 default

judgment was entered against a debtor.  (*Id*. at p. 164.)  Two years later, following

settlement negotiations, the judgment debtor in a letter purported to accept the judgment

creditor's offer to accept a lump sum payment of $15,000 in full satisfaction of the

judgment, enclosing a photocopy of a cashier's check for that amount.  (*Id*. at pp. 165-

166.)  The judgment creditor claimed his settlement offer had been previously rejected by

the debtor during negotiations and demanded payment of $60,000.  (*Id*. at p. 166.)  The

judgment debtor filed a section 664.6 motion to enforce the purported settlement

agreement allowing him to pay only $15,000 in full satisfaction of the judgment.  (*Ibid*.)

The trial court denied the motion.  (*Ibid*.)  On appeal, after concluding the trial court

properly found the section 664.6 procedure was inapplicable to enforcement of an alleged

settlement agreement after a judgment is entered and there is no pending litigation,

*Walton* discussed the availability of section 724.050 to enforce an agreement to accept

less than the full amount of a judgment. (*Walton*, at p. 174.)  *Walton* stated:

"[S]tatutory authority concerning the satisfaction of judgments only confirms that *a judgment debtor . . . who wishes to enforce an alleged agreement to satisfy a judgment, whether for full payment or something less than that, is not without a remedy*.  But it is not

13

section 664.6. *Section 724.050, subdivision (d), specifically provides a noticed motion procedure to compel a judgment creditor to furnish an acknowledgment of satisfaction of judgment through which a trial court may determine whether an agreement for full satisfaction has been reached.* The statutory scheme for satisfaction of judgment (§ 724.010 et seq.), which includes this section, has been characterized as providing 'only a single method for a judgment debtor to obtain an order for entry of satisfaction of judgment . . . in those cases in which the judgment creditor refuses or fails to file or deliver a signed acknowledgment of satisfaction. . . . There is no other procedure [than section 724.050] authorizing a noticed motion for entry of satisfaction of judgment.' [Citations.] [The judgment debtor's] alleged settlement agreement is just the kind of agreement for which *section 724.050, subdivision (d) is available--to compel the judgment creditor to furnish an acknowledgment of satisfaction of judgment based on an agreement to satisfy the judgment by payment for less than the full face amount.*" (*Walton v. Mueller*, *supra*, 180 Cal.App.4th at p. 174, italics added; see also *Yost-Linn Lumber & Finance Co. v. Bennett* (1931) 116 Cal.App. 155, 157 [trial court was authorized to find the judgment creditor had "agreed to accept" the sum of $606 in satisfaction of the $839 default judgment].)

Although the language quoted above may be dicta, we nevertheless agree with *Walton*'s conclusion that section 724.050 provides the method for a judgment debtor to enforce a judgment creditor's agreement to accept less than the full amount of the judgment and obtain an acknowledgment of satisfaction of judgment after tendering or paying that agreed-on lesser amount. When a judgment debtor files a section 724.050 motion, the court may determine whether there was an agreement for satisfaction of the judgment by payment of less than the full amount of the judgment. (*Walton*, at p. 174.)

Based on our review of the undisputed facts in this case, we conclude Horath and Hess agreed in the Stipulation that Horath would accept payment of less than the amount of the Award and the judgment if the Award (and amount of the judgment) exceeded

14

$100,000 plus costs. More specifically, Horath agreed in the Stipulation to accept payment of $100,000 plus costs if the Award and the judgment entered exceeded $100,000 plus costs. By filing a section 724.050 motion, Hess properly sought to enforce Horath's agreement to accept payment of $100,000 plus costs as full satisfaction of the judgment in the amount of $366,527.22 that was entered confirming the Award. By concluding otherwise, the trial court erred.

We disagree with Horath's assertion, adopted by the trial court, that *Walton* is inapposite to this case because in *Walton* the agreement arose *after* the judgment was entered and in this case the agreement arose *before* the judgment was entered (and before the arbitration proceeding and Award). That is a distinction without a difference. The point in time when a judgment creditor (or potential judgment creditor) agrees to accept payment of an amount less than the full amount of the judgment (or potential judgment) is irrelevant to the enforceability of that agreement. Rather, it is the existence of that agreement alone that leads to its enforceability under section 724.050 and general principles of contract law. There is no logical reason to preclude a creditor and debtor from agreeing in advance of entry of a judgment that a creditor will accept payment of less than the full amount of the judgment entered thereafter as full satisfaction of that judgment.

In this case, both parties benefited by the Stipulation's "high-low" provision. If the amount of the Award and judgment was less than $44,000, Horath would benefit by requiring Hess to pay her $44,000 plus any costs awarded by the arbitrator. On the other hand, if the amount of the Award and judgment was more than $100,000, Hess would

15

benefit by having to pay Horath only $100,000 plus costs awarded by the arbitrator. When the latter scenario ultimately resulted and the amount of the Award and judgment exceeded $100,000, Horath's agreement to accept payment from Hess of only $100,000 plus costs remained enforceable after issuance of the Award and entry of the judgment, and was properly enforced by Hess pursuant to a section 724.050 motion. As we concluded above, Hess was *not* required to first file a motion to vacate or correct the Award to enforce Horath's agreement by filing a section 724.050 motion.[4] On remand, the trial court shall consider anew Hess's section 724.050 motion and, on a showing he satisfied the statutory prerequisites for relief thereunder, shall issue a new order granting relief under section 724.050, subdivision (d), and awarding him any damages that may be appropriate under section 724.050, subdivision (e), and reasonable attorney fees under section 724.080.[5]

---

[4] Also, as we concluded above, the Stipulation provided that the Award (and implicitly the judgment) was not to be limited by the Stipulation's "high-low" provision. Therefore, as Hess asserts, there were no valid grounds on which he could challenge the Award by filing a petition to vacate or confirm it. The fact that he attempted to enforce the Stipulation's "high-low" provision by filing a (presumably untimely) motion to limit the amount of the Award and judgment entered thereon did *not* preclude him from subsequently filing his section 724.050 motion to enforce Horath's agreement to accept payment of a lesser amount than the amount of the Award and judgment as full satisfaction of the judgment.

[5] Section 724.080 provides: "In an action or proceeding maintained pursuant to this chapter, the court shall award reasonable attorney's fees to the prevailing party."

16

III

*Court's Award of Attorney Fees to Horath*

Hess contends the trial court also erred by awarding Horath attorney fees in the amount of $5,000 pursuant to section 724.080. Because we reverse the trial court's order denying Hess's section 724.050 motion, Horath is not the prevailing party and is not entitled to reasonable attorney fees as a prevailing party under section 724.080. Accordingly, the court's award of $5,000 in attorney fees to Horath must also be reversed.

*Case No. D063124*

IV

*Mootness of Other Appeal*

Hess apparently contends in his appeal in Case No. D063124 that the judgment must be reversed because the trial court erred by denying his postjudgment section 724.050 motion. However, in his appellate briefs Hess concedes he did not have any valid grounds on which to challenge the Award or entry of the judgment. His appeal in Case No. D063124 apparently was filed as a "protective" appeal to ensure he did not waive any arguments he raised in his appeal in Case No. D063709. Because we reverse the court's postjudgment order denying Hess's section 724.050 motion, the appeal in Case No. D063124 is moot and we need not, and do not, address its merits. Nevertheless, given Hess's concession the judgment was properly entered, we affirm the judgment and reverse the postjudgment order.

17

DISPOSITION

The judgment is affirmed.  The order denying Hess's section 724.050 motion for acknowledgment of satisfaction of judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.  Hess shall recover his costs of appeal.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McINTYRE, J.