Filed 11/16/21  Mansour v. Farmers Insurance Exchange CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ZAKI MANSOUR, <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> FARMERS INSURANCE EXCHANGE et al., <br><br> Cross-defendants and Respondents. | B298538 <br><br> (Los Angeles County Super. Ct. No. BC371493) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Avalon Legal Group, Bryan Naddafi and Elena Nutenko; Benedon & Serlin, Kelly Riordan Horwitz and Kian Tamaddoni for Cross-complainant and Appellant Zaki Mansour.

Arent Fox, Richard D. Buckley, Jr. and George N. Koumbis; Lewis Brisbois Bisgaard & Smith, Jeffrey A. Miller and Barry

Kaiman for Cross-defendants and Respondents Farmers Insurance Exchange and Travelers Property Casualty Company of America.

———————————————

Zaki Mansour appeals from the denial of his motion to compel acknowledgment of full satisfaction of two money judgments totaling $213,056 entered against him and his ex-wife Luzelba in favor of Marina Strand Colony #1 Homeowners Association, Inc. (Marina).[1]  The judgments were entered following an arbitration relating to Luzelba's condominium in Marina's complex.  When Luzelba later sold the condominium, the buyer required Marina to release all liens against the property, including two judgment liens arising from the arbitration, and Marina tendered an escrow demand for $112,500 as an "agreed upon settlement amount."  After receiving payment from the escrow, Marina recorded a form acknowledgment of satisfaction of judgment that checked the box for "[f]ull satisfaction," but also checked the box stating "[t]he judgment creditor has accepted payment or performance other than that specified in the judgment in full satisfaction of the judgment," to which was added "[a]s to the real property located at 41560 Via Dolce #337" (the condominium address).

On appeal, Zaki contends the escrow demand constituted Marina's unambiguous agreement to accept $112,500 in full satisfaction of the two money judgments against the Mansours. Marina's insurance carriers, Travelers Property Casualty Company of America and Farmers Insurance Exchange

_____

[1]     We refer to Zaki and Luzelba Mansour by their first names to avoid confusion.

2

(collectively, the Carriers)[2] contend the escrow demand and acknowledgment of judgment are ambiguous and the trial court properly considered extrinsic evidence showing that Marina and Luzelba intended the $112,500 as payment for a release of all liens on the property, but not full satisfaction of the judgments. We agree with the Carriers and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Marina's Judgments Against the Mansours[3]*

Zaki and Luzelba married in 1993 and separated in 2010. Prior to their marriage, Zaki purchased a condominium in the Marina Strand Colony 1 complex at 4150 Via Dolce in Marina del Rey (the property). Before they were married, Luzelba refinanced the property and transferred the proceeds from the refinance to Zaki, in exchange for which title was placed in Luzelba's name as her separate property. Zaki and Luzelba lived in the property with their children until approximately 2003. Marina is the homeowner's association for the condominium complex.

In 2007 Mary Kusion and her son, Ian Rowe, lived in the condominium below the Mansours' unit. The Kusions filed a complaint against the Mansours and Marina alleging the Mansours had installed prohibited flooring and plumbing that caused noise and water intrusion into the Kusions' unit, and

---

[2] On February 11, 2021 we granted the Carriers' unopposed motion to be substituted in place of Marina.

[3] Our summary of the facts is based on the declarations and exhibits submitted in connection with Zaki's motion to compel acknowledgment of satisfaction.

3

Marina concealed and refused to remedy these violations and other problems in the common areas. Marina and the Mansours filed cross-complaints against each other: Marina sought from the Mansours indemnification and recovery of unpaid assessments, and the Mansours alleged Marina interfered with their use of the property and caused them to incur costs. In March 2010 Marina and the Mansours entered into a settlement agreement resolving their cross-complaints, under which the parties agreed to submit to binding arbitration of all disputes arising from the settlement.

In August 2010 the Mansours commenced arbitration against Marina, alleging breach of the settlement agreement as to repairs Marina was to perform under the agreement. The arbitrator ruled in favor of Marina and awarded it attorneys' fees and costs as the prevailing party under the settlement agreement. On March 17, 2014 the trial court entered a judgment confirming the arbitrator's award in the amount of $170,545 (the 2014 judgment).

In November 2014 the Mansours initiated another arbitration against Marina to enforce the terms of the settlement agreement. The arbitrator granted Marina's summary judgment motion and awarded it attorneys' fees and costs, and on August 1, 2016 the trial court entered a second judgment for Marina confirming the award in the amount of $42,511 (the 2016 judgment). Marina subsequently recorded a judgment lien against the property.

B.   *The Sale of the Property, Escrow Demand, and Acknowledgment of Satisfaction*

According to a declaration Luzelba submitted in the Mansours' dissolution proceeding, Zaki was responsible for the

4

Mansours' finances prior to their separation, but Luzelba later learned that Zaki had stopped making payments on the condominium, including the promissory note, the home equity line of credit, and the homeowners' association dues on the property. As a result, several liens and judgments were recorded against the property, exceeding $522,341. In 2016 Luzelba discovered the note securing the deed of trust was in default and the property was facing foreclosure. Fearing a foreclosure and damage to her credit, Luzelba found a buyer for the property, Kartomi, Inc., which specialized in acquiring distressed properties and was interested in buying the property in a short sale.

In order to purchase the property, Kartomi required Marina to release all liens and encumbrances against the property. To that end, on September 7, 2017 Marina transmitted a demand letter to the escrow agent handling the sale (the escrow demand). The escrow demand, signed by Tracy Neal, one of Marina's attorneys at Beaumont Gitlin Tashjian (Beaumont), was titled "[Marina] Escrow Demand / 4050 Via Dulce, Unit 337, Marina Del Rey, CA 90292 Escrow No: 17-5423-JS." The document stated, "In connection with the pending sales transaction, this shall serve as [Marina's] Amended Escrow Demand as follows," then listed six debts relating to the property, including the "Abstract of Judgment recorded on September 2, 2014 for 2012 Arbitration-Attorney's Fees and Costs" in the amount of $170,545 (the 2014 judgment) and the "Judgment entered on August 1, 2016 for 2014 Arbitration-Attorney's Fees and Costs" in the amount of $42,511 (the 2016 judgment). The other four debts included unpaid assessments, late fees, administrative fees, and another judgment, totaling $12,891. The escrow demand listed the total amount of the six items as

5

$228,931, below which it indicated the "AGREED UPON SETTLEMENT AMOUNT" was $112,500. The escrow demand copied only the Marina board of directors; it did not mention the Mansours.

On September 7, 2017 Kartomi executed a settlement and mutual release agreement with Marina (release). The release included a recital that "[Kartomi] tendered a settlement offer for $112,500.00 in exchange for releases of [Marina's] encumbrances against [the property]. Said releases shall release [the property] only, and shall not release the sellers to the contemplated real estate transaction personally." The release included a Civil Code section 1542 waiver provision stating, "[N]othing contained . . . in the [release], shall release the seller in the contemplated real estate transaction, Luzelba Lozano-Mansour, nor Zaki Mansour (whether or not same is a seller in the contemplated real estate transaction[)], personally[,] or otherwise as to their obligations to [Marina] (including judgments) evidenced by [Marina's] encumbrances against the property." (Boldface and underlining omitted.) The Mansours were not parties to the release.

Upon the sale of the property, the escrow agent paid $112,500 to Marina through her Beaumont attorneys. Beaumont disbursed $14,501 to Marina "for amounts owed to it directly" and the remaining $97,999 to the Carriers, who had furnished Marina's legal defense in the arbitrations. Neal prepared and signed an "acknowledgment of satisfaction of judgment" (capitalization omitted) on Judicial Council form EJ-100 (acknowledgment), which was recorded against the property on September 25, 2017. Where the form provided, "Satisfaction of the judgment is acknowledged as follows," Neal checked the box for "[f]ull satisfaction," rather than the boxes for "[p]artial satisfaction" or "[m]atured installment." Neal also checked the

box stating, "The judgment creditor has accepted payment or performance other than that specified in the judgment in full satisfaction of the judgment," but he added next to this statement in typeface, "As to the real property located at 4150 Via Dolce # 337 Marina del Rey, CA 90292."

C.    *Zaki's Motion To Compel Acknowledgment of Satisfaction*

On March 13, 2019, in response to the Carriers' efforts to collect on Marina's judgments against Zaki's property in Nevada, Zaki filed a motion to compel Marina to acknowledge full satisfaction of judgment pursuant to Code of Civil Procedure section 724.050.[4]  Zaki argued the escrow demand constituted an offer by Marina to accept $112,500 as the "'[a]greed [u]pon [s]ettlement [a]mount'" to satisfy the six listed debts, including the 2014 and 2016 judgments, and the Mansours accepted this offer when they closed escrow, allowing Marina to receive $112,500 from the sale.  Zaki asserted the recording of an acknowledgment of full satisfaction of judgment (instead of partial satisfaction) showed Marina's intent that the settlement fully satisfy the judgments.

---

[4]    Code of Civil Procedure section 724.050 provides that if a judgment has been satisfied, the judgment debtor may demand the judgment creditor file an acknowledgment of satisfaction of judgment, and if the creditor fails to do so, the debtor may file a motion for an order requiring the creditor to comply with the demand and to pay the debtor's attorneys' fees.  All further undesignated statutory references are to the Code of Civil Procedure.

Zaki also submitted Luzelba's September 14, 2017 declaration filed in the Mansours' divorce proceeding.[5] Luzelba declared that "the negotiated demands from the liens and judgments on the Via Dolce Property" include an "offer of settlement" by Marina "with respect to assessments, late fees, interest, and related charges; a memorandum of costs; an abstract of judgment recorded September 2, 2014; a judgment entered August 1, 2016; and an amended judgment entered on March 16, 2017, against Zaki Mansour and Luzelba Mansour," for $112,500.00. Luzelba stated further, "Certain creditors have reduced the total amount of their demands under the assumption that the sale would proceed as planned."

In its opposition, Marina argued the escrow demand did not constitute a settlement of its judgments against the Mansours, noting the Mansours were not mentioned in the document, were not involved in its negotiation, and were not third party beneficiaries of the agreement. Rather, the revised escrow demand was a "communication sent to [the escrow agent] in order to proceed with the contemplated sale," and the intent of the parties was "clearly not that the judgments would be satisfied in full." Further, the release negotiated by Marina and Kartomi expressly stated the Mansours would not be released from the judgments by the $112,500 payment to Marina. Marina also asserted Neal's inclusion of the property address on the acknowledgment showed Marina's intent was limited to satisfaction of Marina's claims against the property, rather than full satisfaction of the judgments against the Mansours.

---

[5]    Luzelba filed the declaration in support of her ex parte application to expunge a notice of pendency of action Zaki had recorded against the property.

8

Robert Nau, Marina's treasurer and board member, stated in a supporting declaration that he understood $112,500 was "Kartomi's settlement amount in order to purchase the [p]roperty in exchange for Marina releasing all the liens and encumbrances placed on the [p]roperty," and "at no point were Luzelba Mansour or Zaki Mansour . . . parties to the understanding that led to the amount required by Marina and Kartomi to release the various Marina liens and encumbrances existing against the [p]roperty. I personally never had any conversations or email communications with the Mansours on this subject." Nau also declared, "At no point did Marina intend a full satisfaction of judgment . . . when [Beaumont] recorded the [a]cknowledgment of [s]atisfaction of [j]udgment. At various times prior to the close of escrow for the sale of the [p]roperty, I was a party to several telephone calls on this subject with Marina's counsel . . . , the escrow officer and counsel retained by Marina's insurance carriers. During each of these phone conversations, it was expressly agreed and understood that Marina would only release its liens and encumbrances placed on the [p]roperty . . . . At no time was it ever discussed or agreed that the $112,500 payment was intended as, or would otherwise constitute, a full and complete release of the Mansours[.]"

Neal similarly declared the revised escrow demand was "never intended to be an agreement or settlement of any kind of what the Mansours owed to Marina on the . . . judgments entered in favor of Marina" and "[i]t was never my office's intent in recording the [acknowledgment], which clearly indicated that it was a full satisfaction . . . 'as to the real property located at 4150 Via Dulce #337, Marina Del Rey, CA 90292' to record a full satisfaction as to the two judgments entered in this [c]ourt against the Mansours." (Boldface and underlining omitted.)

9

Neal testified the release signed by Kartomi "reflect[ed] the understanding of Marina and Kartomi."

Marina also offered excerpts of Luzelba's testimony from a January 2019 deposition in the Carriers' Nevada collection action. Luzelba was asked, "Did you ever enter into . . . a settlement agreement to fully discharge the debt that was owed to Marina and its carriers?" Luzelba responded, "I don't believe . . . that I did. In my mind, the way I understood this whole process, was that they were willing to accept whatever they got from the sale and that they would come after me for the rest. All I wanted was to get that condo sold and not get a foreclosure and try to get rid of as much debt as I could. [¶] . . . [¶] . . . It's not that I believed that the sale . . . cleared their debt. [¶] . . . [¶] . . . But if I help them and if I corroborate [sic] with them, they will go after another asset that's not directly attached to me."

In his reply memorandum, Zaki argued other portions of Luzelba's deposition testimony showed that Luzelba believed the $112,500 payment would fully satisfy the two judgments. In response to the question, "Was the idea that selling this property ultimately would discharge any and all obligations?," Luzelba replied, "I believed that that would have been the case. And to my surprise, it wasn't. Because I was constantly being reached out by [Marina's attorney] that I am still owing them a balance. [¶] . . . [¶] . . . I had numerous phone calls from him, 'We are going to help you, but we can only help you if you help us.' I'm still thinking that I owe this money, but in hindsight I thought that by selling the property, then they get paid off. [¶] But when I had a meeting with them, they told me we're not going to budge, we will still come after you for the remaining balance."

After a hearing, on April 26, 2019 the trial court denied Zaki's motion.  In its seven-page order, the court found there was an ambiguity in the acknowledgment created by the language, "'The judgment creditor has accepted payment or performance other than that specified in the judgment in full satisfaction of the judgment.  As to the real property located at 4150 Via Dolce #337 Marina del Rey, CA 90292.'"  The court therefore considered what it described as "extrinsic evidence," including the declarations and deposition testimony submitted by Marina, and found "that neither [Luzelba] nor Marina intended the $112,500 to be a full satisfaction of the judgment.  Correspondingly, it remains an issue of fact as to whether [Zaki] could rely on the [a]cknowledgment to claim the judgment was satisfied."  The court concluded Zaki failed to show the judgment had been satisfied.

Zaki timely appealed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

"If a money judgment has been satisfied, the judgment debtor . . . may serve . . . on the judgment creditor a demand in writing that the judgment creditor do one or both of the following: [¶] (1) File an acknowledgment of satisfaction of judgment with the court.  [Or] [¶] (2) Execute, acknowledge, and deliver an acknowledgment of satisfaction of judgment to the person who made the demand."  (§ 724.050, subd. (a); see *Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 898.)  "If the judgment creditor does not comply with the demand within the time allowed, the person making the demand may apply to the court on noticed motion for an order requiring the judgment

11

creditor to comply with the demand." (§ 724.050, subd. (d); see *Gray1 CPB*, at p. 898.) "If the court determines that the judgment has been satisfied and that the judgment creditor has not complied with the demand, the court shall either (1) order the judgment creditor to comply with the demand or (2) order the court clerk to enter satisfaction of the judgment." (§ 724.050, subd. (d).)

Section 724.050 "has been interpreted to require the trial court to first determine whether the judgment has been satisfied in fact before ordering entry of satisfaction of judgment." (*Schumacher v. Ayerve* (1992) 9 Cal.App.4th 1860, 1863; see *Pierson v. Honda* (1987) 194 Cal.App.3d 1411, 1414, fn. 4 ["a reasonable reading of the section requires the trial court find actual satisfaction of the judgment"].) A motion under section 724.080, subdivision (d), is a proper mechanism by which a judgment debtor may force a judgment creditor to agree to accept a lesser amount as full satisfaction of a judgment. (*Horath v. Hess* (2014) 225 Cal.App.4th 456, 469 [judgment creditor's "agreement to accept payment from [debtor] of only $100,000 plus costs . . . was properly enforced by [debtor] pursuant to a section 724.050 motion"].)

"On appeal, we will uphold the factual findings supporting the trial court's decision on a motion for satisfaction of judgment if the findings are supported by substantial evidence." (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 748; accord, *George S. Nolte Consulting Civil Engineers, Inc. v. Magliocco* (1979) 93 Cal.App.3d 190, 193-194.) "We will presume the existence of every fact the finder of fact could reasonably deduce from the evidence in support of the judgment or order. [Citation.] . . . [A]ll intendments and presumptions must be indulged to support the

12

judgment or order on matters as to which the record is silent, and error must be affirmatively shown." (*Jhaveri*, at pp. 748-749.)

However, we apply a different standard of review here, where Zaki had the burden of proof on his motion to satisfy judgment to show the 2014 and 2016 judgments had been satisfied, which burden the trial court found Zaki did not meet. "'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' [Citation.] 'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'" (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979; accord, *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769; *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.) "'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Juen*, at p. 979; accord, *Dreyer's Grand Ice Cream*, at p. 838.) "[U]nless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [losing party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

13

B.    *The Trial Court Properly Considered Evidence of the Parties' Intent*

Zaki contends the escrow demand, coupled with the Mansours' payment of the demand through escrow, constituted an unambiguous written agreement for Marina to accept $112,500 in full satisfaction of the money judgments against the Mansours, and the trial court therefore erred in considering the acknowledgment and other evidence of the parties' intent with respect to the settlement payment.  The Carriers counter that Zaki was neither a party nor a third party beneficiary of the escrow demand, which was negotiated between Marina and Kartomi and tendered to the escrow agent, and Marina did not authorize Neal to sign an acknowledgment of full satisfaction of the judgments.  The Carriers contend the trial court correctly treated the acknowledgment as a contract and considered extrinsic evidence based on an ambiguity in the acknowledgment as to whether the parties intended that the settlement payment fully satisfy the two judgments.  Zaki has the better argument that the escrow demand constituted an agreement reflecting the parties' intent to settle their dispute, but contrary to his contention, the escrow demand was ambiguous, and therefore the trial court properly considered extrinsic evidence (including the acknowledgment) in determining the intent of the parties in reaching a $112,500 settlement.

As to the acknowledgment, we are not aware of any legal authority treating an acknowledgment of satisfaction of judgment as a mutual agreement between a creditor and debtor that a judgment has been satisfied.  Rather, an acknowledgment of satisfaction of judgment is evidence of the creditor's intent as to whether a judgment has been partially or fully satisfied.  (See *McCall v. Four Star Music Co.* (1996) 51 Cal.App.4th 1394, 1401.)

14

In *McCall*, relied on by the Carriers, the Court of Appeal considered whether a judgment against one of several jointly liable defendants (Joe E. Johnson) had been satisfied where the other defendants had reached a settlement agreement with the plaintiffs that fully released the claims against all parties "'except Joe E. Johnson, individually.'" (*Id.* at p. 1397, italics omitted.) The plaintiffs filed an acknowledgment of satisfaction of judgment that checked the box stating "'[t]he judgment creditor has accepted payment or performance other than specified in the judgment in *full satisfaction of the judgment*,'" but they named only the settling defendants and omitted Johnson's name. (*Ibid.*) In determining whether the plaintiffs intended to release Johnson, the Court of Appeal considered the parties' settlement agreement, explaining "[t]he intent of the parties as expressed in the release is controlling." (*Id.* at p. 1400.) The court treated the acknowledgment as "further evidence of [plaintiffs'] intention" not to release Johnson because the acknowledgment named the settling defendants and not Johnson. (*Id.* at p. 1401.) Here too, the acknowledgment is evidence the trial court properly considered in determining Marina's intent in accepting the $112,500 settlement payment.[6]

As to the escrow demand, even if it constituted an enforceable agreement between Marina and the Mansours (or

---

[6] In *McCall*, the court concluded the filing of an acknowledgment of satisfaction of judgment that provided for "'full satisfaction of the judgment'" (italics omitted) was "clearly a clerical error which does not accurately reflect the intent of the parties." (*McCall v. Four Star Music Co., supra*, 51 Cal.App.4th at pp. 1397, 1402.)

15

Luzelba as the owner of the property),[7] the agreement is ambiguous because it does not state whether the $112,500 "agreed upon settlement amount" (capitalization omitted) constituted a full settlement as to the two judgments (as argued by Zaki) or only settlement of the liens recorded against the property (as argued by the Carriers). "'Extrinsic evidence is admissible . . . to interpret an agreement when a material term is ambiguous.'" (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432; see *Pacific Gas & Electric Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37, 39-40 [notwithstanding the plain and unambiguous language on the face of a contract, if extrinsic evidence is "relevant to prove a meaning to which the language of the instrument is reasonably susceptible," the extrinsic evidence may be admitted to determine the contracting parties' objective intent].)

Zaki argues that because the escrow demand listed the two judgments and their full money value, Marina unambiguously agreed to settle those judgments for $112,500. But in referring to the property in the subject line and including in the "[t]otal [a]mount" owed Marina's additional claims against the property, including unpaid assessments and fees, a reasonable interpretation of the escrow demand is that it was intended only to clear the liens on the property so it could be sold to Kartomi.

---

[7] Although we do not decide whether the Mansours were third party beneficiaries of the escrow demand, Luzelba may have been—she was the property owner; she understood that clearing the claims against the property was a condition for closing a sale; and the settlement payment came from the sale proceeds. Further, Luzelba's deposition testimony indicates she agreed to a settlement with Marina, albeit reluctantly, when she pursued the Kartomi sale.

In light of the ambiguity in the agreement, extrinsic evidence was admissible to show the intent of the parties in agreeing to the $112,500 settlement. (*Brown v. Goldstein, supra*, 34 Cal.App.5th at p. 432.)

C.     *Zaki Failed To Present Evidence Compelling a Finding the Parties Agreed to Full Satisfaction of the Judgments*

Marina presented significant evidence below that she and Luzelba did not intend the settlement payment to satisfy fully the judgments against the Mansours. Nau averred he was involved on behalf of Marina in telephone conversations with the Beaumont attorneys, Kartomi, and the Carriers' attorneys, and "[d]uring each of these phone conversations, it was expressly agreed and understood that Marina would only release its liens and encumbrances placed on the [p]roperty . . . . At no time was it ever discussed or agreed that the $112,500 payment was intended as, or would otherwise constitute, a full and complete release of the Mansours[.]" The release—which Neal testified "reflect[ed] the understanding of Marina and Kartomi"—stated the $112,500 was "in exchange for releases of [Marina's] encumbrances against [the property]. Said releases shall release [the property] only, and shall not release to the sellers to the contemplated real estate transaction personally." Luzelba testified in her January 2019 deposition that she understood and acquiesced in the agreement reached between Marina and Kartomi: "In my mind, the way I understood this whole process, was that they were willing to accept whatever they got from the sale and that they would come after me for the rest. All I wanted was to get that condo sold and not get a foreclosure and try to get rid of as much debt as I could. [¶] . . . [¶] . . . It's not that I believed that the sale . . . cleared their debt. [¶]

17

. . . [¶] . . . They just made it very clear to me that . . . whatever they received, that they're still going to come after me for the rest." Luzelba testified her paramount concern was avoiding foreclosure, and she hoped that if she cooperated with Marina, "they will go after another asset that's not directly attached to me."

Zaki argues the recording of the acknowledgment shows Marina agreed to full satisfaction of the judgments because had Marina intended only a partial satisfaction, it would have selected "[p]artial satisfaction" rather than "[f]ull satisfaction" on the acknowledgment form. But as the trial court found, the acknowledgment is ambiguous because Neal added the limiting language that provided, "'As to the real property located at 4150 Via Dolce # 337 Marina del Rey, CA 90292'" after the form language stating that the judgment creditor had accepted payment other than full satisfaction. The language specifying that the $112,500 payment fully satisfied Marina's claims "[a]s to the real property" is consistent with Nau's and Neal's accounts, as well as the language in the release stating that Marina's settlement offer for $112,500 was "in exchange for releases of [Marina's] encumbrances against the [property]."[8]

_____

[8] Zaki also argues that if Marina had intended to release only its claims against the property, it could simply have recorded a release of its judgment lien under section 697.370 rather than an acknowledgment. Section 697.370, subdivision (a)(1), provides that a judgment creditor may "release from the judgment lien all or part of the real property subject to a lien." A release "is sufficient if it is executed by the judgment creditor in the same manner as an acknowledgment of satisfaction of judgment . . . ." (§ 697.370, subd. (b).) Although the acknowledgment of satisfaction of judgment was carelessly

18

Zaki points to portions of Luzelba's 2017 declaration contemporaneous with the sale and her 2019 deposition testimony as evidence Luzelba believed the settlement would fully satisfy the money judgments. But Luzelba's declaration, like the escrow demand, lists "negotiated demands from the liens and judgments on [the property]," including the two judgments and other debts relating to the property, including "assessments, late fees, interest, and related charges." Nowhere in her declaration does Luzelba state she understood Marina's offer fully released her or Zaki from the judgments.

Zaki also points out that when Luzelba was asked at her deposition whether selling the property "would discharge any and all obligations," she responded, "I believed that that would have been the case. And to my surprise, it wasn't." But Luzelba acknowledged, "[W]hen I had a meeting with them, they told me we're not going to budge, we will still come after you for the remaining balance." And, as noted, Luzelba testified later in the deposition that her understanding of the settlement agreement was that "they would come after me for the rest."

The ambiguous acknowledgment and declaration, combined with Luzelba's inconsistent deposition testimony, does not constitute "'uncontradicted and unimpeached'" evidence that is "'of such a character and weight as to leave no room for a judicial determination'" that Marina agreed to accept $112,500 in full satisfaction of the money judgments. (*Juen, supra,* 32 Cal.App.5th at p. 979; *Dreyer's Grand Ice Cream, Inc. v.*

_____

prepared, and a release of the judgment liens would have been more appropriate, Zaki provides no authority that Marina was required to record a release rather than to utilize the acknowledgment form.

19

*County of Kern, supra*, 218 Cal.App.4th at p. 838.) We therefore affirm the trial court's contrary finding.

## DISPOSITION

The trial court order denying Zaki's motion to compel acknowledgement of satisfaction of judgment is affirmed. The parties are to bear their own costs on appeal.


                                        FEUER, J.

We concur:


    PERLUSS, P. J.            IBARRA, J.*

---

\* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.