Filed 10/3/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID S. KARTON, A LAW CORPORATION, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MUSICK, PEELER, GARRETT LLP, <br><br> Defendant and Respondent. | B305837 <br><br> (Los Angeles County Super. Ct. No. BC206243) |

APPEAL from orders of the Superior Court of Los Angeles County, Edward B. Moreton, Jr., Judge. Affirmed.

Benedon & Serlin, Gerald M. Serlin and Melinda W. Ebelhar for Plaintiff and Appellant David S. Karton, A Law Corporation.

Musick Peeler & Garrett, Cheryl A. Orr; Joshua P. Friedman and Associates, and Joshua P. Friedman for Defendant and Respondent Musick, Peeler & Garrett LLP.

_____

In 2015 and 2017, William Russell Dougherty obtained judgments against David S. Karton, A Law Corporation (the Law Corporation). In July 2019, Dougherty assigned the judgments to Musick Peeler & Garrett LLC (Musick Peeler).

In October 2019, the Law Corporation filed a motion (the setoff motion) in the superior court to set off against its judgment debt to Musick Peeler a debt that Dougherty allegedly owes to the Law Corporation. Dougherty's purported debt is the sum of attorney fees the Law Corporation incurred as a result of Dougherty's alleged tortious actions to hinder, delay, or defraud the Law Corporation in its efforts to collect on a 1999 default judgment prior to our opinion vacating that judgment and declaring it void in 2009. (See *David S. Karton, A Law Corp. v. Dougherty* (2009) 171 Cal.App.4th 133, 152 (*Karton I*).) The court denied the motion, and the Law Corporation appealed.[1] For the reasons given below, we affirm the order.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

### A. The Law Corporation's 1999 Default Judgment and Enforcement Efforts[2]

In 1996, Dougherty retained the Law Corporation to represent him in a marital dissolution action. The retainer

---

[1] In response to the appeal, Musick Peeler filed a motion for sanctions against the Law Corporation, David S. Karton, and the law firm representing them on appeal. We shall address the sanctions motion in a separate order.

[2] Our summary of the facts is based in part on evidence the Law Corporation offered in support of its setoff motion. Although the trial court sustained Musick Peeler's objections to such

agreement provides that the "prevailing party" shall be entitled to recover "legal fees for services" incurred in connection with the enforcement of the agreement and the collection of fees and costs.

In 1999, the Law Corporation sued Dougherty, seeking to recover $65,246.63 in unpaid fees and costs, plus interest. In August 1999, the trial court entered a default judgment against Dougherty for a total of $86,676.88, including accrued prejudgment interest, attorney fees, and costs.

By October 4, 1999, the Law Corporation had collected, by levy upon Dougherty's bank accounts, approximately $56,000 in partial satisfaction of the default judgment. On that date, Dougherty filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.

The Law Corporation commenced an adversary action against Dougherty in the bankruptcy proceeding that resulted in an order denying Dougherty a discharge under the Bankruptcy Code. The Law Corporation thereafter filed actions in Pennsylvania, Tennessee, and Arkansas against Dougherty to enforce and collect the judgment in those states. As a result of these efforts, the Law Corporation garnished Dougherty's wages in Tennessee and Arkansas. In addition, the Law Corporation filed a second action in Tennessee, which the parties refer to as the Tennessee fraudulent transfer action. In that action, the Law Corporation alleged that Dougherty, with the intent to hinder, delay, and defraud the Law Corporation: purchased property in Nevada; "[d]iverted sale proceeds" from the sale of a Tennessee residence, transferred funds into a "bank account that was

---

evidence, we will assume for purposes of our summary that the evidence is admissible.

3

hidden from the Law Corporation"; transferred title of a Pennsylvania residence to himself and his then-wife Kimberly Moseley; failed to disclose rent Dougherty received from property in Pennsylvania; transferred funds into Moseley's account; and transferred funds into a bank account located outside of Tennessee.

In 2004 and 2005, Dougherty commenced what the parties refer to as the "collateral attack" actions in California seeking to set aside the 1999 default judgment. Dougherty dismissed the 2004 collateral attack action before the Law Corporation filed a responsive pleading. The superior court sustained the Law Corporation's demurrer to the 2005 collateral attack action without leave to amend on the ground that the action was barred by the doctrine of collateral estoppel as a result of the 1999 default judgment. Dougherty's appeal from the ensuing judgment was dismissed for failure to post an appeal bond. The superior court subsequently awarded the Law Corporation more than $115,000 in attorney fees it incurred in response to the collateral attack actions.

In 2006, a Pennsylvania court ordered Dougherty to pay to David S. Karton (the Individual) and the Individual's counsel $30,000 as contempt sanctions for discovery violations.[3]

---

[3] In prior appeals between the Law Corporation and Dougherty, we used the single word, Karton, to refer to the Law Corporation. (See *Karton I*, *supra*, 171 Cal.App.4th at p. 135; *David S. Karton, A Law Corp. v. Dougherty* (2014) 231 Cal.App.4th 600, 603 (*Karton II*). In this case, we use the phrase, "the Law Corporation," to avoid confusing it with the Individual, with whom it shares the Karton name.

4

On December 31, 2007, a Tennessee Chancery Court denied the Law Corporation's motion for summary judgment in the Tennessee fraudulent transfer action. The court, however, made a finding that Dougherty's transfer of title to certain property in Pennsylvania from himself to both him and Moseley "was a fraudulent transfer" and ordered the transfer set aside.

**B.      The 1999 Default Judgment is Vacated in *Karton I***

In 2003 and 2007, the Law Corporation, without notice to Dougherty, requested the superior court award it additional attorney fees and costs based on its enforcement and collection efforts, including fees incurred in connection with Dougherty's bankruptcy proceeding, the Pennsylvania and Tennessee collection actions, the Tennessee fraudulent transfer action, and the California collateral attack actions. The court granted the requests in their entirety. The second such award, entered in February 2007, increased the principal amount of the judgment to more than $1.3 million.

In 2007, Dougherty filed a motion to vacate the default judgment and the 2003 and 2007 fee awards, which the trial court denied. Dougherty appealed.

In *Karton I*, *supra*, 171 Cal.App.4th 133, we held that the 1999 default judgment was void on its face because the judgment exceeded the amount the Law Corporation had sought in its complaint. (*Id.* at pp. 149−151.) We directed the trial court to enter an order vacating and setting aside that judgment and the 2007 fee award. (*Id.* at pp. 151−152.) We also noted that our opinion "nullif[ied]" the 2003 fee award. (*Id.* at p. 151, fn. 18.) The trial court thereafter set aside the entry of Dougherty's default, as well as the default judgment.

5

Our holding in *Karton I* had consequences for the Law Corporation's actions in Tennessee and California. In April 2009, a Tennessee Court of Appeal held that, as a result of *Karton I*, "there no longer exist[s] any California judgments . . . for the Tennessee courts to enforce." (*David S. Karton v. Dougherty* (Tenn.Ct.App. Apr. 29, 2009, No. M2008-01478-COA-R3-CV) 2009 Tenn.App. LEXIS 158 at p. *6.) In August 2010, Dougherty filed in the Tennessee collection action a motion/petition for writ of restitution in the Tennessee Chancery Court and a motion to vacate all judgments. The court granted the motion/petition for writ of restitution, directing the Law Corporation to pay Dougherty $151,137.86 as restitution for the Law Corporation's garnishment of Dougherty's wages. The Tennessee court also granted Dougherty's motion to vacate all judgments because, in part, "the original 1999 California judgment is void and all subsequent California judgments are vacated." The court explained that "none of the judgments that have been enrolled by [the Law Corporation] in Tennessee are enforceable."[4]

In December 2010, the Los Angeles County Superior Court granted Dougherty's motion to vacate the judgment in the 2005 collateral attack action and the related attorney fee awards. The court explained that the judgment in the collateral attack action and the related fee awards are void because they were

---

[4] In a 2019 proceeding concerning the 2006 Pennsylvania sanctions order, the Court of Common Pleas of Lehigh County, Pennsylvania, noted the Tennessee court's finding that, as a result of *Karton I*, "there was no longer a judgment to enforce in Tennessee," and stated that if the Law Corporation sought "to enforce the underlying judgment in Pennsylvania, the same would be true in Pennsylvania."

6

"based on a 'void' judgment." Division Eight of this court affirmed that ruling in 2012. (*Dougherty v. David S. Karton, A Law Corporation* (Oct. 11, 2012, B230074) [nonpub. opn.].)

In February 2011, a Tennessee Chancery Court issued an order that "revised" its December 31, 2007 summary judgment order in the Tennessee fraudulent transfer action. In particular, the court "deleted" its finding in the prior order, that Dougherty's transfer of title to property in Pennsylvania "was a fraudulent transfer."

### C. The Law Corporation's Action to Recover Its Costs and Fees After *Karton I*

After the trial court vacated Dougherty's default pursuant to *Karton I,* the fee dispute between the Law Corporation and Dougherty was arbitrated by a panel of the Los Angeles Bar Association pursuant to Business and Professions Code section 6201. The arbitrators found in favor of Dougherty and determined that he had previously paid the Law Corporation " 'an amount far in excess of the amounts owed for legal services plus interest on the amounts billed.' " (*Karton II*, *supra*, 231 Cal.App.4th at p. 605.)

After the arbitration ruling, the Law Corporation filed a request for trial de novo in the superior court. In addition to alleging a cause of action against Dougherty for breach of the retainer agreement and common counts, the Law Corporation included a sixth cause of action seeking to recover damages from

7

Dougherty under the tort of another doctrine and a seventh cause of action for declaratory relief.[5]

Under the tort of another cause of action, the Law Corporation alleged that Dougherty had "been engaged in a pattern of fraud and fraudulent transfers, which has required [the Law Corporation] to pursue claims against other people and certain assets." Dougherty's allegedly wrongful conduct included: the filing of a "fraudulent [b]ankruptcy" proceeding in 1999, making fraudulent transfers to his accountant, transferring his property in Pennsylvania to Moseley with the "intent to hinder, delay, or defraud [the Law Corporation]," and transferring his and Moseley's property in Tennessee and Arkansas to Moseley only, with the "intent to hinder, delay, or defraud [the Law Corporation]." As a result of such conduct, the Law Corporation allegedly incurred expenses responding to these wrongful acts.

In its declaratory relief cause of action, the Law Corporation sought a declaration that, among other things, the Law Corporation "is entitled to be reimbursed for the attorneys' fees that it incurred in the various lawsuits between [the Law Corporation] and Dougherty, the [Tennessee] Fraudulent Transfer Action, and [Dougherty's] Bankruptcy [proceeding]."

In a trial brief to the court, the Law Corporation explained that its "pursuit of a 'tort of anther' claim was appropriate to

---

[5] In another cause of action for "Indebtedness Assumpsit," the Law Corporation alleged that Dougherty had agreed in October 2006 to pay $30,000 in connection with the Law Corporation's Pennsylvania collection action. The trial court granted Dougherty's motion to strike this allegation, noting that the Law Corporation must proceed to enforce the $30,000 Pennsylvania judgment or order in a separate proceeding.

recover the moneys that [the Law Corporation] incurred due to [Dougherty's] fraudulent transfers." The Law Corporation further argued that the court could decide the tort of another cause of action without having "to decide whether [Dougherty] committed a tort, that is, whether he made fraudulent transfers."

In February 2012, the superior court held a bench trial. In August 2012, the court issued a statement of decision setting forth its finding that by March 10, 2008, the Law Corporation "had collected funds sufficient to cover all principal and interest payments due on [the Law Corporation's] invoices under the [retainer agreement]," and by July 3, 2008, the Law Corporation "had collected $14,383.30 in excess of the amounts owed by [Dougherty] under that agreement." Therefore, the court concluded, "Dougherty's debt to [the Law Corporation] for the fees billed under the [retainer agreement] and interest on overdue amounts has been extinguished." Because Dougherty had not filed a cross-complaint, the court stated further, he was not entitled to a money judgment for the overpayment, but "is entitled to a credit insofar as the amount of excess funds collected by [the Law Corporation], without interest, which he may apply to any other obligation he owes to plaintiff."

The court rejected the Law Corporation's tort of another cause of action. Under the tort of another theory, the court stated, a " 'person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees and other expenditures thereby suffered or incurred.' " (Quoting *Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 (*Prentice*).) The court explained that the right to

9

recover attorney fees under this theory is an exception to the general rule, codified in section 1021,[6] that attorney fees are recoverable only as provided by statute or contract. (See *Prentice, supra*, 59 Cal.2d at pp. 620−621.)[7]

Although the court recognized that the Law Corporation had paid attorney fees to prosecute the Tennessee fraudulent transfer action, the Law Corporation had "not shown that any portion of the fees paid by it to prosecute the Tennessee fraudulent transfer action against . . . Moseley produced any benefit to [the Law Corporation] of the kind recognized in *Prentice, supra,* [59 Cal.2d 618,] or that such fees were reasonably necessary, because of . . . Dougherty's wrongdoing, to protect [the Law Corporation's] interest."[8] Lastly, the court determined that the Law Corporation's request for a judicial declaration that it was entitled to recover its attorney fees incurred in the various lawsuits between the Law Corporation and Dougherty, the Tennessee fraudulent transfer action, and Dougherty's bankruptcy proceeding was rendered moot by its ruling on the other causes of action.

---

[6] Subsequent unspecified statutory references are to the Code of Civil Procedure.

[7] Section 1021 provides in relevant part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties."

[8] Later in its statement of decision, the court reiterated its conclusion, stating that the Law Corporation had "obtained no relief" in the Tennessee fraudulent transfer action and had "not shown in this case entitlement to any amount of attorney fees incurred in Tennessee as damages for a fraudulent transfer."

In August 2012, the court entered a judgment stating that the Law Corporation had collected $14,383.30 in excess of the amount Dougherty owed under the retainer agreement. Although the Law Corporation could not recover damages on any of its causes of action, the court ruled that it "may seek by way of post-trial motion to have such fees, as the court may find to have been reasonably and necessarily incurred by it, included in [the] judgment."

Dougherty and the Law Corporation each filed motions to be determined the prevailing party and for awards of attorney fees. Dougherty sought $543,128.50 in fees; the Law Corporation sought $1,661,565. The Law Corporation included in its claim the attorney fees it incurred in connection with Dougherty's bankruptcy proceeding, fees incurred in its collection efforts in California, Pennsylvania, Tennessee, and Arkansas, and fees incurred in connection with the Tennessee fraudulent transfer action.

In June 2013, the court denied Dougherty's motion and granted the Law Corporation's motion (the June 2013 order). The court found that the Law Corporation is "the prevailing party under . . . section 1032 and Civil Code section 1717," and the fees the Law Corporation sought in Dougherty's bankruptcy proceeding, the Pennsylvania collection action and the Arkansas collection action are "reasonable." The court awarded the Law Corporation $1,161,565 in attorney fees. The court declined to award the Law Corporation $500,000 in fees it allegedly incurred in the "Tennessee actions," which, the court noted, "have not concluded." The denial was "without prejudice" to the Law Corporation's right to apply for such fees "in Tennessee."

11

## D.    *Karton II*:  **Dougherty Is The Prevailing Party**

Dougherty appealed from the August 2012 judgment and the June 2013 order awarding attorney fees and costs to the Law Corporation.  Although the Law Corporation filed a cross-appeal from the judgment, it did not challenge the court's ruling on its merits or, more particularly, the court's rejection of its tort of another or declaratory relief causes of action.  (*Karton II*, *supra*, 231 Cal.App.4th at p. 614, fn. 6.)

In *Karton II*, *supra*, 231 Cal.App.4th 600, we reversed the judgment "insofar as it awards costs to [the Law Corporation], and the orders of June 25, 2013, awarding attorney fees to [the Law Corporation]."  (*Id.* at p. 614.)  We held that Dougherty was the prevailing party within the meaning of section 1032 and Civil Code section 1717.  (*Id.* at pp. 610, 612.)  We directed the trial court "to enter a new and different order granting Dougherty's motion to be determined the prevailing party . . . and for an award of costs and attorney fees, in an amount to be determined on remand."  (*Id.* at p. 614.)  We otherwise affirmed the judgment.

Dougherty thereafter filed a motion in the superior court for an award of attorney fees against the Law Corporation.[9]  The trial court granted Dougherty's motion and, on September 25,

---

[9] While the court's decision on Dougherty's fee motion was pending, the Law Corporation filed a motion in the trial court for an order setting aside our opinion in *Karton I* and all subsequent orders, rulings, and proceedings.  The court denied that motion and we affirmed in an unpublished opinion.  (*David S. Karton, A Law Corporation v. Dougherty* (Jan. 10, 2019, B268342) [nonpub. opn.].)

2015, entered judgment in his favor in the amount of $655,258.80.[10]

On July 18, 2017, the trial court entered a second judgment in favor of Dougherty and against the Law Corporation in the amount of $33,257.20 for fees and costs awarded in *Karton II*. The sum of the principal amounts of the September 25, 2015 judgment and the July 18, 2017 judgment is $688,538.10.

On July 10, 2019, Dougherty assigned the two judgments to Musick Peeler. We refer to the two judgments at times as the Musick Peeler judgments.

### E.    The Law Corporation's Setoff Motion

In October 2019, the Law Corporation filed the setoff motion, seeking an order "authorizing '[s]etoffs [a]gainst'" the Musick Peeler judgments and "an order to bifurcate the issue of punitive damages." The notice of motion states that it "is brought on the grounds that the Law Corporation has cross-demands that substantially exceed the amounts of the judgments against it now held by Musick Peeler." In its supporting memorandum of points

_____

[10] The September 25, 2015 judgment initially and erroneously named David S. Karton—i.e., the Individual— as the judgment debtor. The trial court subsequently granted Dougherty's application to correct the judgment nunc pro tunc to name the Law Corporation as the judgment debtor. The Law Corporation appealed that ruling and we affirmed. (*David S. Karton, A Law Corporation v. Musick, Peeler & Garrett LLP* (Mar. 4, 2020, B289113 [nonpub. opn.].) We also determined that the appeal was frivolous and granted a motion by Dougherty for monetary sanctions against the Law Corporation in the amount of $89,224.38. (*David S. Karton, A Law Corporation v. Musick, Peeler & Garrett LLP*, order imposing sanctions filed May 7, 2020, B289113.)

and authorities, the Law Corporation relied on section 431.70 as "[a]uthority for the Law Corporation's request for a setoff[ ]," and the "application of the equitable principle of off-set." The Law Corporation argued that, when its "cross-demands" are setoff against the Musick Peeler judgments, Musick Peeler "will be required to file full satisfactions as to each judgment," citing section 724.010.

The Law Corporation's cross-demands consist of claims that the Law Corporation suffered "damages" as a "result of fraudulent transfers by Dougherty, while conspiring primarily with [Moseley] . . . to defraud the Law Corporation." (Italics omitted.) The Law Corporation calculated its $1,154,119.02 setoff claim by adding the amount of its legal fees and costs incurred since August 1999 (1) "preventing Dougherty from obtaining a discharge" in bankruptcy proceedings, (2) enforcing the 1999 judgment against Dougherty in Pennsylvania, Tennessee, and Arkansas, (3) pursuing the Tennessee fraudulent transfer action, and (4) responding to the 2004 and 2005 collateral attack actions. It also includes the amount of the $30,000 award to the Individual by a Pennsylvania court in 2006 against Dougherty as a discovery sanction.

The Law Corporation acknowledged that the setoff amount is substantially identical to the attorney fees and costs the trial court had awarded in June 2013, which we reversed in *Karton II*. The Law Corporation argued, however, "that it may use the same fees to support its claim for fees as damages as were used to support its claim for fees based on a prevailing party theory inasmuch as the two theories . . . are distinct and each is based on a 'separate primary right.' "

14

The Law Corporation supported the motion with the Individual's declaration and documents related to the underlying proceedings in this case, Dougherty's bankruptcy case, the Pennsylvania collections action, and the Tennessee fraudulent transfer action. The Law Corporation did not, however, submit evidence of the attorney fees it had allegedly incurred as damages other than references to the statement in the trial court's June 2013 order that the fees the Law Corporation sought in its action on the contract "are reasonable." The Law Corporation further stated that it "can support with documentary evidence" various transactions Dougherty made "to avoid using funds to satisfy the debt."

Music Peeler filed an opposition to the motion, supported with declarations by Dougherty and Dougherty's counsel. Musick Peeler argued, among other arguments, that the claims asserted by the Law Corporation are barred by principles of res judicata and collateral estoppel based on the trial court's 2012 ruling adjudicating the Law Corporation's tort of another cause of action. Regarding the Law Corporation's claim based on the Pennsylvania sanctions order, Musick Peeler pointed out that the Pennsylvania order had not been reduced to judgment in Pennsylvania and, if the Law Corporation obtains such a judgment, its remedy is to file a sister-state enforcement action in California. Musick Peeler further asserted that the Law Corporation's reliance on equitable principles is misplaced because equity in this case "militate[s] against application of any offset," that section 431.70 does not apply because that statute applies only to affirmative defenses asserted in an answer to a complaint, and that the Law Corporation failed to provide

15

competent evidence to support its claims. Musick Peeler also filed objections to the Individual's declaration.

During a hearing held on January 6, 2020, the court sustained all of Musick Peeler's objections other than an objection to the Individual's oath, and denied the setoff motion. The court explained that, "aside from the evidentiary problems," the motion "does not set forth any authority that would provide a basis for relief." The court stated that section 724.010, which the Law Corporation had cited in its motion, "does not support the proposition that a judgment debtor is entitled to setoffs for the various and sundry claims and potential claims that it describes." Counsel for the Law Corporation argued that the motion is based on section 431.70, and that "we stated a claim for setoff" under that statute. The court rejected the argument, and further stated that, "regardless of one's view of the law, there simply isn't sufficient admissible evidence to support the argument."

On January 27, 2020, the Law Corporation filed a motion for new trial and/or to set aside and vacate the order denying the setoff motion (the new trial motion). The Law Corporation argued that the court's order was based on "errors of law, fact and procedure" and that the court's evidentiary rulings are erroneous. It did not rely on any new or different facts.[11] Musick Peeler opposed the motion. On March 16, 2020, the court denied the motion.

---

[11] In its reply to Musick Peeler's opposition to the motion for new trial, the Law Corporation stated that it had recently obtained a judgment in Pennsylvania on its 2006 sanctions award, that the judgment was corrected to identify the Law Corporation as the judgment creditor, and that the Law Corporation had domesticated the judgment in California.

The Law Corporation timely appealed from the January 6, 2020 order.

## DISCUSSION

### A.    Standards of Review

The party "seeking an offset against a money judgment has the burden of proving the offset." (*Conrad v. Ball Corp.* (1994) 24 Cal.App.4th 439, 444 (*Conrad*).)  We review the court's ruling denying a setoff under the abuse of discretion standard. (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 762–763 (*Fassberg*).) We will not find an abuse of such discretion in the absence of a showing that the ruling "resulted in a manifest miscarriage of justice." (*Wm. R. Clarke Corp. v. Safeco Ins. Co. of America* (2000) 78 Cal.App.4th 355, 359 (*Wm. R. Clarke*).)

We consider issues of law, including the interpretation of statutes, de novo. (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837; *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

### B.    The Setoff Motion is Procedurally Groundless

The setoff motion does not clearly state a procedural ground for the motion.  The notice of motion states that it is "brought on the grounds that the Law Corporation has cross-demands that substantially exceed the amounts of [the Musick Peeler] judgments."  It further states that it is based on the supporting memorandum of points and authorities, which includes citations to sections 431.70 and 724.010, discussed below.  When the trial court raised the issue during the hearing, the Law Corporation's counsel asserted that the motion is authorized by section 431.70.  It reasserts the point on appeal.

17

We agree with Musick Peeler that section 431.70 does not authorize the setoff motion.

Section 431.70 provides in relevant part: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. . . . For the purposes of this section, a money judgment is a 'demand for money.' "

As its plain language indicates, section 431.70 authorizes a party who has been sued and has a "cross-demand[ ] for money" against the plaintiff to "assert in the answer the defense of payment." (§ 431.70.) Thus, "a setoff claim [made under section 431.70] may only be used defensively, being in nature a defensive pleading asserting that the claim constituted prior payment for the amount sought in the plaintiff's complaint." (*Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 197–198; see *Morris Cerullo World Evangelism v. Newport Harbor Offices & Marina, LLC* (2021) 67 Cal.App.5th 1149, 1159 [section 431.70 codifies the "affirmative defense of setoff"]; *Wm. R. Clarke, supra,* 78 Cal.App.4th at pp. 360−361, fn. 6 [section 431.70 "applies . . . only when the right to a setoff is raised as a defense"]; see, e.g., *Fassberg, supra*, 152 Cal.App.4th at pp. 731−732, 763−764 [defendant who asserted

18

setoff as affirmative defense and established the validity and amount of claim at trial entitled to setoff].)

Here, the Law Corporation asserted its right to setoff in a postjudgment motion, not as an affirmative defense in an answer to a complaint. Therefore, section 431.70 does not provide a basis for the Law Corporation's motion.

The Law Corporation also cited section 724.010 in its motion and relied on that statute in its motion for new trial. Section 724.010 is within division 5, chapter 1 of the Enforcement of Judgments law, which governs the manner of acknowledging satisfaction of a judgment and a procedure for compelling a judgment creditor to file an acknowledgement of satisfaction of judgment. (§§ 724.010−724.100.) Subdivision (a) of section 724.010 provides that "[a] money judgment may be satisfied by payment of the full amount required to satisfy the judgment or by acceptance by the judgment creditor of a lesser sum in full satisfaction of the judgment." Subdivision (b) governs satisfaction of a money judgment by levy. Subdivision (c), which the Law Corporation emphasized in its motion for new trial, provides that a money judgment may be "satisfied by payment to the judgment creditor by check or other form of noncash payment," and that "the judgment creditor" is obligated "to give or file an acknowledgment of satisfaction of judgment . . . when the check or other form of noncash payment has actually been honored upon presentation for payment."

The Law Corporation argued below that the assertion of its setoff claims is a valid method of making a "noncash payment" within the meaning of section 724.010, subdivision (c), and, on appeal, compares the setoff motion to a motion to compel acknowledgment of satisfaction of judgment, which "is an entirely

19

acceptable procedure for seeking an offset against a judgment." (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 753 (*Jhaveri*); see also *Coonan v. Loewenthal* (1905) 147 Cal. 218, 221.)

Even if we assume that a disputed claim can constitute a "noncash payment" for purposes of section 724.010—a proposition for which the Law Corporation offers no authority— a motion to compel acknowledgement of satisfaction of judgment requires compliance with the requirements set forth in section 724.050. (See *Horath v. Hess* (2014) 225 Cal.App.4th 456, 466 ["section 724.050 provides the sole statutory procedure to require a judgment creditor to file an acknowledgment of satisfaction of judgment or, if he or she refuses, to obtain a satisfaction of judgment entered by the court clerk]; *Quintana v. Gibson* (2003) 113 Cal.App.4th 89, 91 [section 724.050 provides "the exclusive method for obtaining an order for entry of satisfaction of judgment"].) These requirements include serving the judgment creditor with a written demand to either file an acknowledgment of satisfaction of judgment with the court or deliver an executed acknowledgment to the judgment debtor. (§ 724.050, subd. (a); *Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 898.)[12] The Law Corporation does

---

[12] The written "demand shall include the following statement: 'Important warning. If this judgment has been satisfied, the law requires that you comply with this demand not later than 15 days after you receive it. If a court proceeding is necessary to compel you to comply with this demand, you will be required to pay my reasonable attorney's fees in the proceeding if the court determines that the judgment has been satisfied and that you failed to comply with the demand. In addition, if the court determines that you failed without just cause to comply

not assert that it complied with these prefiling requirements, and nothing in our record indicates that it did so. Therefore, to the extent the Law Corporation relies on the procedure for compelling an acknowledgment of satisfaction of judgment, it is not entitled to relief on that basis.[13]

In addition to relying on sections 431.70 and 724.010, the Law Corporation cites to cases where courts considered equitable setoff principles in various factual and procedural settings. (See, e.g., *Erlich v. Superior Court* (1965) 63 Cal.2d 551, 555−556; *Jones v. Mortimer* (1946) 28 Cal.2d 627, 632−634; *Harrison v. Adams* (1942) 20 Cal.2d 646, 648−649 (*Harrison*); *Machado v. Borges* (1915) 170 Cal. 501, 502−503; *Jhaveri, supra*, 176 Cal.App.4th at pp. 753−754; *Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 859−861; *Brienza v. Tepper* (1995) 35 Cal.App.4th 1839, 1847−1849; *Salaman v. Bolt* (1977) 74 Cal.App.3d 907, 918−920; *Margott v. Gem Properties, Inc.* (1973) 34 Cal.App.3d 849, 853−857; *Sunrise Produce Co. v. Malovich* (1950) 101 Cal.App.2d 520, 522−525.) None of these authorities, however, holds that a judgment debtor may use a nonstatutory

---

with this demand within the 15 days allowed, you will be liable for all damages I sustain by reason of such failure and will also forfeit one hundred dollars to me.' " (§ 724.050, subd. (b).)

[13] To the extent the Law Corporation sought to set off the $30,000 Pennsylvania discovery sanctions order, the appropriate procedure, as the court informed the Law Corporation in 2012, is to file an application for judgment on a sister state judgment pursuant to the Sister State Money Judgments Act (§ 1710.10 et seq.). We note that, after the court denied the setoff motion, the Law Corporation did so, as discussed in a recent unpublished opinion from this court. (*David S. Karton, A Law Corporation v. Dougherty* (Sept. 1, 2022, B310431) [nonpub. opn.].)

21

postjudgment motion to obtain an offset against its judgment debt based on disputed claims. Indeed, our Supreme Court has stated that, in the absence of a stipulation, when, as here, the disputed claims are for "attorney fees under the 'tort of another' doctrine," the claims "may not be asserted by post-trial motion but rather must be pleaded and proved to the trier of fact." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 869, fn. 4; see *Vacco Industries, Inc. v. Van Den Berg* (1992) 5 Cal.App.4th 34, 56; see generally 1 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2022), §§ 7.3, 7.34 (1 Pearl); 2 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2022) §§ 11.32, 11.42.)

In the absence of a valid procedural ground for the motion, the court did not abuse its discretion in denying the motion.

### C. The Claims Asserted in the Setoff Motion Are Without Merit

In addition to denying the setoff motion on procedural grounds, the court stated that "there simply isn't sufficient admissible evidence to support the argument." We agree.

The Law Corporation seeks to set off against the Musick Peeler judgments its fees and costs incurred in connection with: (1) Dougherty's bankruptcy proceedings, (2) enforcement actions in Tennessee, Pennsylvania, and Arkansas, (3) the Tennessee fraudulent transfer action, (4) the Pennsylvania sanctions award, (5) the California collateral attack actions, and (6) the $30,000 Pennsylvania judgment. With the exception of the Pennsylvania judgment, the setoff claims are based on the tort of another doctrine. Under that doctrine, a "person who through the tort of another has been required to act in the protection of his interests by *bringing or defending an action against a third person* is entitled to recover compensation for the reasonably necessary

22

loss of time, attorney's fees, and other expenditures thereby suffered or incurred."  (*Prentice*, *supra*, 59 Cal.2d at p. 620, italics added; see *Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1310 (*Sooy*) [the "theory of recovery is that the attorney fees are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action"]; *UMET Trust v. Santa Monica Medical Investment Co.* (1983) 140 Cal.App.3d 864, 871 [party seeking fees under tort of another doctrine must prove that it was "*compelled* or *required* to bring or defend an action against the third person"].)

Here, the Law Corporation offered no evidence in support of its setoff motion that it brought or defended an action against a third person related to the bankruptcy proceedings as a result of any tort Dougherty committed against the Law Corporation. Rather, it appears from our record that the Law Corporation commenced an adversary action against Dougherty alone with the effect of preventing Dougherty from obtaining a discharge. The tort of another doctrine does not apply to these facts.

In support of its motion, the Law Corporation argued that the decision in *Berger v. Varum* (2019) 35 Cal.App.5th 1013 authorizes the recovery of "legal fees" as damages "as a result of conduct intended to hinder, delay and/or defraud the creditor." In *Berger*, the plaintiff, Berger, sued his judgment debtors for fraudulent conveyance based on allegations that the defendants took "actions to intentionally 'hinder, delay or defraud' Berger from collecting payment on the judgment." (*Id.* at p. 1017.)  The court held that Berger had stated a "common law" fraudulent transfer cause of action, which permits the recovery of damages under applicable tort principles. (*Id.* at pp. 1020–1022.)  In particular, the court held that "the damages alleged by Berger

23

fall within the scope of recoverable tort damages and satisfy the damage element for a fraudulent transfer claim for purposes of demurrer." (*Id.* at p. 1021.) Berger's alleged damages included "increased financing fees" and "foreclosure fees" (*id.* at p. 1020)— which the Law Corporation appears to have misleadingly described in the setoff motion as "legal fees." The description of Berger's alleged damages, however, does not include *attorney* fees, and nothing in *Berger* suggests that the court was extending the tort of another doctrine, departing from the general rule limiting the recovery of attorney fees to those authorized by statute or agreement (§ 1021), or otherwise holding that a plaintiff can recover attorney fees incurred litigating against a defendant tortfeasor in a fraudulent transfer action. *Berger*, therefore, does not help the Law Corporation.

Moreover, the only evidence the Law Corporation offered of the fees it incurred in connection with the bankruptcy proceedings is a statement by the California trial court in its June 2013 ruling that such fees were "reasonable" for purposes of awarding the Law Corporation its fees as the prevailing party on its contract cause of action. In *Karton II*, however, we reversed that ruling without qualification (*Karton II*, *supra*, 231 Cal.App.4th at p. 614), and, therefore, the court's ruling retained no further "vitality or force." (*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655; see *Odlum v. Duffy* (1950) 35 Cal.2d 562, 564 ["the reversal of a judgment or order ordinarily leaves the proceeding in the same situation in which it stood before the judgment or order was made"].)

Even if the trial court's finding of reasonableness survived our disposition in *Karton II*, that finding has no relevance on the question whether the fees are recoverable as tort damages under

24

the tort of another doctrine.  The court's June 2013 finding was made with respect to the Law Corporation's postjudgment motion for attorney fees as costs pursuant to Civil Code section 1717 and section 1032.  Such fees may be awarded by the court to a prevailing party in an "action on a contract" for fees "incurred to enforce that contract."  (Civ. Code, § 1717, subd. (a).)  When a party is entitled to fees as costs on that basis, the court, in determining the reasonableness of such fees, may " 'take all of the circumstances [of the case] into account.' "  (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 683.)

The recovery of attorney fees *as damages under the tort of another doctrine*, by contrast, is limited to the "necessary attorney fees incurred in third party litigation which is proximately and foreseeably caused" by the defendant's tortious conduct.  (*Sooy, supra,* 220 Cal.App.3d at p. 1312; see *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 818−820.)  Thus, even if the court's June 2013 finding of reasonableness as to the fees the Law Corporation incurred to enforce its retainer agreement with Dougherty was not nullified in *Karton II*, the finding has no bearing on the issue of the Law Corporation's alleged attorney fees as damages under the tort of another doctrine.

With respect to fees and costs incurred in Pennsylvania, the Law Corporation offered evidence that it pursued enforcement of the 1999 default judgment in that state, but does not offer any evidence that it brought or defended any action against a third person in Pennsylvania.  The Law Corporation points to the Tennessee Chancery Court's finding in 2007 that Dougherty's quitclaim of certain property in Pennsylvania to Moseley "was a fraudulent transfer" and ordered that it be "set aside."  The Law Corporation omits to mention, however, that

25

the same Tennessee court subsequently "deleted" this finding, effectively negating any possible claim for tort of another attorney fees related to the alleged fraudulent transfer. Also, the only evidence of the amount of fees incurred in the Pennsylvania action is the court's June 2013 statement that such fees were reasonable for purposes of awarding fees to the Law Corporation as the prevailing party on the contract cause of action. As with the same statement regarding the fees incurred in the bankruptcy proceedings, even if that statement survived our decision in *Karton II*, it has no relevance in determining the existence or amount of attorney fees recoverable as damages under the tort of another doctrine.

The Law Corporation filed two actions in Tennessee: an action to domesticate and enforce the 1999 California default judgment in Tennessee, and the Tennessee fraudulent transfer action. The Law Corporation offered no evidence that the Tennessee enforcement action was brought against a third person. Therefore, any fees or costs incurred in connection with that action are not recoverable as damages under the tort of another doctrine. (See *Prentice, supra,* 59 Cal.2d at p. 620.)

In the Tennessee fraudulent transfer action, the Law Corporation filed the action against both Dougherty and Moseley.[14] That action is apparently still pending in Tennessee, and the only documents before the superior court at the hearing on the setoff motion that evidence the Tennessee court's findings in that case are: (1) an order denying the Law Corporation's

_____

[14] Musick Peeler does not argue that the voiding of the 1999 judgment in *Karton I* in 2009 necessarily precludes the Law Corporation from pursuing the Tennessee fraudulent transfer action.

26

motion for summary judgment, which stated that Dougherty's transfer of certain property in Pennsylvania was a fraudulent transfer, and (2) a subsequent order revising the earlier order to delete the finding of a fraudulent transfer. Such evidence is insufficient to establish a claim for fraudulent transfer, let alone a claim for the recovery of attorney fees incurred in that action based on the tort of another doctrine.

Even if the Law Corporation had stated a valid and subsisting claim based on fraudulent transfers in Tennessee, it offered no evidence of the amount of fees and costs incurred as a result of having to pursue a third person in that action. (See *Conrad*, *supra*, 24 Cal.App.4th at p. 445 [failure to distinguish between amount that could be used as an offset from amount that could not "precludes any offset, for want of supporting facts"].) Indeed, as the Law Corporation conceded to the trial court in its 2012 trial brief, it needed to establish the amount of fees it incurred "pursuing . . . Moseley (which are recoverable under the 'tort of another' theory) and the fees spent pursuing [Dougherty] (which are not)." (See 1 Pearl, *supra*, §§ 7.4, 7.13 [attorney fees recoverable under tort of another doctrine are those incurred litigating against the third party, not those incurred litigating against the tortfeasor].) Instead, the Individual states only a single sum purportedly incurred in connection with both the Tennessee enforcement action and the Tennessee fraudulent transfer action.

The Law Corporation further asserts that it incurred fees in connection with enforcement efforts in Arkansas, but does not offer any evidence that it brought or defended any action against a third person in Arkansas. And the only evidence of the amount of its attorney fees is the irrelevant reference to the court's 2013

27

finding that the fees incurred in the Arkansas collection efforts were reasonable for purposes of determining an award of fees as the prevailing party on the contract. Our analysis of the Law Corporation's claims for fees in the bankruptcy proceeding and the Pennsylvania and Tennessee actions applies equally to the claim for fees incurred in the Arkansas action.

To the extent the Law Corporation incurred any fees or costs in connection with its defense against the collateral attack actions in California, they were incurred in defending actions by Dougherty, not a third person. These actions, therefore, do not support a setoff claim based on the tort of another doctrine. (See *Prentice, supra*, 59 Cal.2d at p. 620.)

In support of the Law Corporation's claim that a Pennsylvania court's $30,000 sanction order against Dougherty should be set off against the Law Corporation's judgment debt to Musick Peeler, the Law Corporation submitted an October 4, 2006 order by the Pennsylvania Court of Common Pleas of Lehigh County awarding the Individual and his counsel $30,000 as a contempt sanction against Dougherty. Because the order, so far as the evidence before the trial court showed, was not in favor of the Law Corporation, it could not be set off against the Law Corporation's judgment debt to Dougherty. (See *Harrison, supra*, 20 Cal.2d at pp. 649–650 [in allowing setoff of one judgment against another, "mutuality is essential"; "the judgments must be between the same parties in the same right"]; *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [reviewing court " 'reviews the correctness of a judgment as of the time of its

28

rendition, upon a record of matters which were before the trial court for its consideration' "].)[15]

Lastly, the Individual's declaration in support of the setoff motion states that the Law Corporation "can support with documentary evidence" that Dougherty made certain fund transfers "to avoid using funds to satisfy the [1999 default judgment] debt." No such evidence, however, was included with the motion or otherwise offered at the hearing on the motion. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 9:44 ["The original or copies of all evidence that will be presented to the court at the motion hearing must be served along with the notice of motion and points and authorities"].) Assertions that evidence exists that could be produced in the future have no evidentiary weight. Moreover, it does not appear that these various alleged transfers, even if they occurred and were wrongful, resulted in the Law Corporation bringing any action against a third person.

For all the foregoing reasons, even if the Law Corporation's motion was procedurally proper, the Law Corporation failed to support its setoff claims with relevant evidence and, therefore,

---

[15] We note that, in an earlier stage of this litigation, the Law Corporation asserted that Dougherty could not enforce the judgment against the Law Corporation because the judgment initially, and erroneously, identified the Individual as the judgment debtor. (*David S. Karton, A Law Corporation v. Musick, Peeler & Garrett LLP* (Mar. 4, 2020, B289113) [nonpub. opn.].) Dougherty was required to correct the judgment to name the Law Corporation as the judgment debtor. The Law Corporation was thus acutely aware of the legal significance of the identification of the parties affected by the court's orders and judgments.

the court did not abuse its discretion in denying the motion.[16]
For the same reason, any error in the court's evidentiary rulings
is harmless.

### D.    The Court Did Not Err in Denying the New Trial Motion

The Law Corporation contends that the court erred in
denying its new trial motion.  We disagree.

Initially, we agree with Musick Peeler that the Law
Corporation's motion is a motion for reconsideration under
section 1008.  Under that statute, a party affected by a court's
order may apply to the court "to reconsider the matter and
modify, amend, or revoke the prior order" "based upon new
or different facts, circumstances, or law."  (§ 1008, subd. (a).)
The statute "specifies the court's jurisdiction with regard to
applications for reconsideration of its orders and renewals of

---

[16] Musick Peeler argued below that the Law Corporation's
setoff claims are barred by the doctrines of res judicata and
collateral estoppel because they seek to relitigate claims that
were raised in the operative complaint and adjudicated against
the Law Corporation in 2012.  Musick Peeler reasserts the
argument on appeal.  With the exception of the claim based
on the $30,000 Pennsylvania sanctions award, which was not
litigated in the underlying action, the argument appears to have
merit.  In its tort of another cause of action, the Law Corporation
sought to recover as tort damages the attorney fees it incurred
in Dougherty's bankruptcy proceeding, its actions against
Dougherty in Pennsylvania, Tennessee, and Arkansas, and the
collateral attack actions.  That cause of action was litigated and
decided against the Law Corporation in 2012.  Nevertheless, in
light of our conclusions as to the motion's procedural defects and
absence of substantive merit, we need not decide these issues.

previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final." (§ 1008, subd. (e).) The statute is "exclusive and jurisdictional" and applies "to interim and final orders alike." (*In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1313.)

According to the Law Corporation, its motion was a "vehicle to seek re-examination of the trial court's legal conclusions on the [setoff] motion." We perceive no difference between a "re-examination" of the court's ruling and the "reconsider[ation of] the matter" contemplated under section 1008. The motion thus fits squarely within the language of section 1008.

A motion for reconsideration must be "based upon new or different facts, circumstances, or law." (§ 1008, subd. (a).) Here, the Law Corporation concedes that it presented no new or different facts in its motion. Although the Law Corporation asserts the court made an "error of law" in denying the motion for setoff, it did not refer the court to any new or different law to support its motion. The court, therefore, did not err in denying the motion.

Even if the motion is treated as a motion for new trial, the court did not err in denying the motion. Generally, trial courts have "wide discretion in ruling on a motion for new trial and that the exercise of this discretion is given great deference on appeal." (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872; accord, *Moreno v. Bassi* (2021) 65 Cal.App.5th 244, 263.) Any determination underlying its ruling, however, "is scrutinized under the test appropriate to such determination." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859;

31

accord, *Guzman v. NBA Automotive, Inc.* (2021) 68 Cal.App.5th 1109, 1115–1116.)

Here, the Law Corporation, in its motion, reiterated its arguments regarding its purported "right to a setoff" and asserts that, "despite detailed legal authority supporting the Law Corporation's motion," the court made an "error of law" in denying the motion. The denial of the motion implies the court's determination that the Law Corporation was not entitled to a setoff. As set forth above, that determination is also reviewed for abuse of discretion. (*Fassberg*, *supra*, 152 Cal.App.4th at p. 762; *Wm. R. Clarke*, *supra*, 78 Cal.App.4th at p. 359.) For the reasons given above, the court did not abuse its discretion in denying the setoff motion and our own examination of the record compels that result as a matter of law. Therefore, the court did not abuse its discretion in denying the new trial motion.

In the new trial motion, the Law Corporation also challenged the court's evidentiary rulings, which are reviewed for abuse of discretion. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1078.) As explained above, in light of the lack of a valid procedural basis for the motion and the absence of substantial evidence—admissible or inadmissible—to support the motion, any error in the court's evidentiary rulings is harmless. Nothing in the new trial motion alters that conclusion.

The Law Corporation argues that the court treated the new trial motion as a motion for reconsideration and, thus, never exercised the discretion that a new trial motion requires. Although the court indicated at the hearing on the motion that it agreed with Musick Peeler that the motion should be deemed a motion for reconsideration, the court also agreed to give further

32

consideration to authority raised by the Law Corporation at the hearing and take the matter under submission. The court thereafter issued a minute order stating that the "motion for new trial . . . is denied." (Capitalization omitted.) The court did not indicate in its order that it was treating the motion as a motion for reconsideration. We construe the order according to its terms as an order denying the new trial motion as such, and infer that the court exercised the discretion it had. In any event, in light of the complete lack of merit to the setoff motion and the new trial motion, any discretion in this instance could only be rationally exercised in one way: to deny the new trial motion.

## DISPOSITION

The January 6, 2020 order denying the motion for setoff is affirmed.

Respondent is awarded its costs on appeal.


ROTHSCHILD, P. J.

We concur.


CHANEY, J.


KELLEY, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.